UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONJA LEWIS-EAZELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BOARD OF EDUCATION OF THE CITY | )   07 C 5300 |
| OF CHICAGO, a municipal corporation, | ) |
| WILLIAM JOHNSON, THOMAS JOHNSON, | ) |
| JAMES WILSON, individually and in their | ) |
| official capacities as employees of the BOARD | ) |
| OF EDUCATION OF THE CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Board of Education of the City of Chicago ("Board") for summary judgment in its favor on the complaint of Plaintiff Sonja Lewis-Eazell ("Eazell"). For the reasons set forth below, the motion is granted.

## BACKGROUND

Eazell is employed as a school security aide at Christian Fenger Academy High School in Chicago, Illinois.[1] She has worked in that capacity since approximately

---

[1] The factual recitation contained herein is derived from pertinent portions of the Board's Rule 56.1 statement of material fact. Because Eazell did not respond to the

September 2003. School security aides perform duties such as monitoring halls during school hours, ensuring the safety of the staff and student body from threats, and reporting security violations to supervisory staff. Eazell's immediate supervisors at Fenger are William Johnson, the school's principal; and Thomas Johnson, the school's security supervisor. James Wilson assisted Thomas Johnson by training security personnel and assisting schools with their security staff.

In September 2006, Eazell had an altercation with a student while working at the school's metal detectors. She claimed that the student hit her. Though Eazell believed that the student should be arrested by the Chicago Police Department, she was not. Eazell requested to be provided with the investigative reports related to the incident, but that request was denied.

In early October 2006, Principal Johnson noted that Eazell had been absent from work for 13 consecutive days. On October 2, he inquired of the Board's Labor and Employee Relations department as to whether Eazell had taken a leave of absence. After receiving a letter requesting an explanation for her absence, Eazell informed the principal through a third party that she wished to return to work later that month. He agreed to this arrangement and Eazell returned to work at the specified time.

---

56.1 statement, properly supported facts within it are deemed admitted by operation of the rule. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)

On November 6, 2006, Eazell filed a grievance, claiming that the Board had failed to provide her with a safe environment and that Wilson had created an uncomfortable work environment. A hearing was scheduled, but on the morning of the day when it was to occur, Eazell called it off. She stated that she would make an appointment at a later date to meet with Principal Johnson, who was in charge of investigating grievances, but the record does not reflect that she ever did so.

In the early part of February 2007, Eazell sent a letter to Wilson regarding an incident with another student. The letter was copied to seven other recipients, including Homeland Security, the CEO of the Chicago Public Schools, and Principal Johnson. According to Eazell, after she told the student that he could not go to his locker, he threatened to throw a bomb through a school window in her direction. The letter stated that Eazell feared for her safety and believed that school officials had not handled the incident properly.

On February 7, 2007, Principal Johnson asked Eazell to make sure that she checked students' hall passes, a process geared toward maintaining order at the school. The same day, he found that she was not checking passes as he had instructed. When he confronted her about this, she answered him in a flippant way. Also on February 7, he saw her using her cell phone while on duty at her post. Security guards at Fenger were not permitted to use a cell phone while on duty because it reduces their attention to their duties.

Later on the 7th, Principal Johnson asked Eazell to report to his office. When she did not comply, he asked Thomas Johnson to escort her to his office. When she arrived, she refused to sit down and stated that she would not talk to the principal without an attorney or union representative. She then left the room and clocked out for the day.

Eazell came to work the next day; when she arrived, Thomas Johnson escorted her to the principal's office at the principal's behest. She again refused to participate in any meeting with him without a lawyer to represent her. Principal Johnson then informed her that he was issuing her a prediscipline hearing notice based on her behavior the day before. The notice indicated that Eazell could be represented by one individual at the hearing. Eazell refused to sign the notice to indicate that she had received it; the principal then told her that she could either sit down and talk to him or leave the building. Eazell chose the latter option. She has not returned to Fenger since that time.

The discipline hearing was scheduled for February 22, 2007. Two days before the hearing, Eazell requested permission to take a leave of absence until March 27, 2007. The request was granted. Later, she requested that the leave be extended indefinitely; the Board granted the extension but set an end date of May 22, 2009. To date, the hearing has not taken place and no discipline has been imposed.

On September 19, 2007, Eazell filed a six-count complaint, asserting age discrimination in violation of the Age Discrimination in Employment Act by the Board,

sex discrimination in violation of Title VII by the Board, retaliation in violation of Title VII by the Board, a cause of action under 42 U.S.C. § 1983 for violation of her First Amendment rights against all defendants, a common law claim for intentional infliction of emotional distress against all defendants, and a claim of negligent supervision against the Board. Count VI was dismissed on April 9, 2008. The Board now moves for summary judgment on the remainder of Eazell's complaint.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

With these principles in mind, we turn to the motion at hand.

## DISCUSSION

**Counts I, II, and III: Age Discrimination, Sex Discrimination, and Retaliation**

Plaintiffs asserting employment discrimination can proceed under the direct or indirect method of establishing their case. *de la Rama v. Illinois Dep't. of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008). Eazell has not provided any indication that she could proceed under the direct method. To use the indirect method for her discrimination claims, she must first set out evidence of four things: membership in a class protected by the statute at issue, that she was satisfying her employer's legitimate expectations, that she was subject to an adverse employment action, and that similarly situated employees outside of the class to which she belonged were treated more favorably. *Filar v. Bd. of Ed. of City of Chicago*, 526 F.3d 1054, 1060 (7th Cir. 2008) (age discrimination); *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 647 (7th Cir. 2005) (Title VII sex discrimination). For her retaliation claim, Eazell must show that she lodged a complaint about discrimination and subsequently was subject to an adverse action even though she was performing her job in a satisfactory way, while similarly situated employees who did not complain were not subject to the same action. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002).

These three causes of action all require demonstration of an adverse action. In the context of a discrimination claim, such an action is defined as a material alteration in the terms and conditions of employment. *Stutler v. Ill. Dep't of Corrections*, 263

F.3d 698, 703 (7th Cir. 2001). In the retaliation setting, a plaintiff need not show that the action changed the terms and conditions of employment, but it must be severe enough that a reasonable person would not engage in the protected activity if he or she knew that the action would result. *Henry v. Milwaukee County*, 539 F.3d 573, 586 (7th Cir. 2008). In addition, there must be a causal link shown between the action at issue and the protected activity that is alleged to have given rise to the retaliation. *Id.*

Eazell's asserted adverse actions in her discrimination claims are her nonreceipt of police reports from her employer, the nonarrest of the student who she contends hit her, participation in a grievance process, and the leave of absence that she characterizes as a suspension. None of these actions qualify as adverse actions sufficient to support a discrimination claim; the only one that materially altered the terms and conditions of her employment is the leave of absence. However, that action was initially taken and later extended at Eazell's request. There is no indication from the record that her leave was imposed upon her by the Board against her will. As a result, her ADEA and Title VII discrimination claims do not satisfy the prima facie showing necessary to create an inference of discrimination on the part of the Board, and summary judgment in its favor is appropriate on these two counts.

With respect to the retaliation claim, Eazell asserted in her charge filed with the Illinois Department of Human Rights that she was escorted from the school on February 8 and placed on leave in retaliation for her filing charges of age discrimination in

December 2002 and December 2006.² These charges are not evidence of what occurred, but they do provide us with the only indication of Eazell's theory of her case, given her lack of response to the instant motion.

The admitted facts proffered in support of the motion for summary judgment establish that Eazell left the school on February 8, 2007, of her own accord and that the leave she has been on since that time was not imposed on her by her employer but instead was granted to her at her request. Later actions taken of one's own volition would not affect a reasonable persons's willingness to file discrimination charges, so these events do not constitute adverse actions that could be considered retaliatory. Moreover, they are not causally linked to any charges she previously filed. For these reasons, Eazell has not presented a viable claim for retaliation that can survive summary judgment.

**Count IV: First Amendment**

Eazell's § 1983 claim rests on two events that she contends were exercises of her First Amendment rights. The first was her reporting of the September 2006 run-in with a student to the Chicago Police Department; the second, her February 2007 letter to Wilson regarding the student who threatened to throw a bomb through a window at her. To form the basis for a § 1983 claim, speech must first be protected by the First

---

²Despite the charge citing age discrimination charges, which would be actionable under ADEA but not Title VII, Eazell's complaint states that the retaliation was in violation of Title VII. Because this discrepancy does not fundamentally affect our analysis, we overlook this inconsistency.

Amendment. In an employment context, speech that is made pursuant to official duties is not protected. *See*, *e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1959-60 (2006); *Renken v. Gregory*, 541 F.3d 769, 774-75 (7th Cir. 2008).

Eazell's duties as a security aide encompassed reporting security matters to her supervisors and the police if necessary; communicating concerns about a workplace to superiors is also an expectation of employment. The communications Eazell advances as the foundation for her First Amendment claim fall within these categories. Consequently, they are not within the scope of her constitutional rights, and the actions of which she complains, even if they could be shown to be causally linked to the report and the letter, are not actionable under § 1983. Defendants are entitled to summary judgment on this claim.

**Count V: Intentional Infliction of Emotional Distress**

Eazell's final count asserts that Defendants intentionally inflicted her with severe emotional distress with the actions of which she complains. Illinois recognizes this tort only in the context of truly extreme and outrageous conduct on the part of the alleged tortfeasor. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). The conduct must rise to this level when viewed through an objective lens; the emotional upheaval caused by the behavior must be so severe that no reasonable person subjected to it could be expected to endure it. *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Even when read in a light most favorable to her, Eazell's contentions amount to an unpleasant

set of events at her workplace. Nothing in the conduct she has described is so beyond the pale of acceptable behavior as to constitute extreme and outrageous conduct. She has provided no argument or support to the contrary. Accordingly, Defendants are entitled to summary judgment on Count V.

## CONCLUSION

Based on the foregoing, the motion for summary judgment is granted in its entirety.

_____
Charles P. Kocoras
United States District Judge

Dated:   December 1, 2008